IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2014 Session

# CARROLL MARIE STOVALL, ET AL. v. UHS OF LAKESIDE, LLC, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT00600610     John R. McCarroll, Jr., Judge**

_____

**No. W2013-01504-COA-R9-CV - Filed April 22, 2014**

_____

Appellant medical providers appeal the trial court's denial of their motions to dismiss a medical malpractice complaint for failure to strictly comply with Tennessee Code Annotated Section 29-26-122(d)(4). Because we conclude that the trial court had good cause to grant an extension, within which to file a certificate of good faith, we affirm the decision of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court is Affirmed and Remanded**.

J. STEVEN STAFFORD, J.,  delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY J., joined.

Joseph M. Clark and Casey Shannon, Memphis, Tennessee, for the appellants, Olugbenga Faleye, M.D. and PrimeHealth Medical Center, P.C.

J. Kimbrough Johnson and Andrea N. Malkin, Memphis, Tennessee for the appellants, John J. Harris, M.D. and John J. Harris, M.D., P.C.

Marty R. Phillips and Ashley D. Cleek, Jackson, Tennessee, for the appellants, UHS Lakeside, LLC d/b/a Lakeside Behavioral Health System.

Cameron C. Jehl, Carey L. Acerra, and Deena K. Arnold, Memphis, Tennessee, and Deborah Truby Riordan, Little Rock, Arkansas, for the appellee, Caroll Marie Stovall.

**OPINION**

**I. Procedural History**

This case arises out of allegedly negligent medical treatment occurring on December 13 and 16, 2009, which is alleged to have caused the death of the decedent, Charles Michael Stovall.[1] On or about October 7, 2010, Plaintiff/Appellee Carroll Marie Stovall, as Surviving Spouse and Executrix of the Estate of Charles Michael Stovall ("Appellee"), sent pre-suit notice to the Defendants/Appellants UHS of Lakeside, LLC d/b/a Lakeside Behavioral Health System ("Lakeside"); John J. Harris, M.D.; John J. Harris, M.D., P.C. (together with Dr. Harris, "Dr. Harris"); Olugbenga Faleye, M.D.; and PrimeHealth Medical Center, P.C. (together with Dr. Faleye, "Dr. Faleye") (collectively, "Appellants"), including authorizations for the release of medical records, *via* certified mail. There is no dispute that the Appellee fully complied with the pre-suit notice requirements of Tennessee Code Annotated Section 29-26-121.

Appellee filed her complaint on December 13, 2010 in the Shelby County Circuit Court.[2] Attached to her complaint, Appellee also filed a certificate of good faith as required by Tennessee Code Annotated Section 29-26-122. The certificate of good faith did not, however, assert that the executing party (in this case, Appellee's counsel) had no prior violations of the good faith certificate statute.

Soon thereafter, in the Spring of 2011, the Appellants filed individual motions to dismiss or answers, raising Appellee's failure to strictly comply with Tennessee Code Annotated Section 29-26-122. Specifically, on February 4, 2011, Dr. Faleye filed a motion to dismiss Appellee's complaint on the basis that Appellee failed to disclose the number of prior violations of the statute as required by Tennessee Code Annotated Section 29-26-122(d)(4). On March 7, 2011, Appellee filed a response to Dr. Faleye's motion to dismiss the complaint on the basis of her failure to file a compliant certificate of good faith. Appellee

---

[1] According to Appellee's brief, Mr. Stovall was admitted to Lakeside for severe depression. Allegedly, while there, Mr. Stovall was administered a dose of an anti-depressant far beyond the recommended dose. As a result, Mr. Stovall allegedly suffered from "severe syncopal episodes due to postural hypotension." Mr. Stovall was transferred to a hospital, but Lakeside allegedly failed to send Mr. Stovall's medical records or otherwise inform the hospital of Mr. Stovall's psychiatric symptoms. Mr. Stovall was subsequently admitted to the hospital by Dr. Faleye. According to the allegations in the Appellee's brief, Dr. Faleye did not "properly assesss Mr. Stovall's psychiatric risks." While allegedly under the care of Dr. Faleye, Mr. Stovall subsequently hanged himself and died.

[2] Other defendants were named in the complaint, but were later dismissed.

argued that, because she had no prior violations of the statute to disclose, her certificate of good faith was not deficient. In addition, Appellee argued that dismissal under the statute was only appropriate if there was a failure to file a certificate of good faith, but not simply because the certificate of good faith contained a technical, non-material omission. Appellee attached a certificate of good faith that showed she had not previously violated the good faith statute.

On July 6, 2011, Appellee filed an amended complaint. Attached to the amended complaint was another certificate of good faith, which was fully compliant with Tennessee Code Annotated Section 29-26-122. At the time of the filing of the amended complaint, both Dr. Faleye and Lakeside had filed answers to Appellee's original complaint. Regardless, all of the parties subsequently filed answers to the amended complaint and none of the parties objected to the filing of the amended complaint. Likewise, neither Lakeside nor Dr. Faleye[3] specifically raised the Appellee's failure to strictly comply with Tennessee Code Annotated Section 29-26-122(d)(4) in their answers. Dr. Harris, however, stated in his answer to the amended complaint that he moved to dismiss the Appellee's complaint "on the ground that [Appellee's] certificate of good faith fails to meet the statutory requirements of T.C.A. § 29-26-122." Despite this fact, the parties moved on to conduct discovery, which was considerable,[4] and the parties set the case for trial.

---

[3] Dr. Faleye did raise failure to state a claim upon which relief could be granted, but did not specifically make reference to the good faith certificate requirement.

[4] As a point of practice, we note that the appellate record in this case consists of seventeen volumes of technical record. In our review of every page of this prolific record, we found that the majority of the pages therein were part and parcel of the protracted discovery that took place in this case. It is, of course, incumbent upon the Appellants to prepare an adequate record for our review. Tenn. R. App. P. 24(b). However, in preparing the record, the Appellants should not lose sight of the other mandates contained in Tennessee Rule of Appellate Procedure 24. We specifically refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part that:

> The following papers filed in the trial court are excluded from the record: (1) subpoenas or summonses for any witness or for any defendant when there is an appearance for such defendant; (2) **all papers relating to discovery, including depositions, interrogatories and answers thereto, reports of physical or mental examinations, requests to admit, and all notices, motions or orders relating thereto**; (3) any list from which jurors are selected; and (4) trial briefs; and (5) minutes of opening and closing of court. Any paper relating to discovery and offered in evidence for any purpose shall be clearly identified and treated as an exhibit. No paper need be included in the record more than once.

The case was delayed numerous times and was heard by several different judges.[5] Ultimately, the case was assigned to Judge John McCarroll. On January 4, 2013, approximately twenty-two months after Appellee filed her response to Dr. Faleye's original motion to dismiss, Dr. Faleye filed a reply to Appellee's response to his motion. In his reply, Dr. Faleye again argued that Appellee's failure to disclose the number of prior violations by the party executing the good faith certificate mandated that her complaint be dismissed with prejudice. The other Appellants soon filed their own motions or joined in Dr. Faleye's motion. Appellee responded with motions to strike the Appellants' motions to dismiss, asserting that they were untimely or waived.

Ultimately, the issue was heard by the trial court on April 4, 2013. Orally, the trial court ruled that Appellee failed to strictly comply with Tennessee Code Annotated Section 29-26-122. The trial court ruled that strict compliance was required to meet the statutory requirements, but that noncompliance could be excused by extraordinary cause. The trial court further ruled that the Appellee had not strictly complied with the statutory requirements and that no extraordinary cause existed. The trial court specifically denied Appellee's laches defense. The trial court ordered that the parties draft an order dismissing Appellee's complaint for failure to comply with the good faith certificate requirement. No written order was entered reflecting the trial court's ruling. Instead, counsel for Dr. Faleye sent a proposed order to counsel for the Appellee to approve.

However, on April 15, 2013, Appellee filed a Motion for Extension pursuant to Tennessee Code Annotated Section 29-26-122(c), seeking to extend the time to file a corrected certificate of good faith. The Appellee attached to her motion a certificate of good faith, which was fully compliant with Tennessee Code Annotated Section 29-26-122, as well as an affidavit from her counsel allegedly showing good cause for the extension. The trial court entered an order requiring the parties to attend a hearing on April 19, 2013, "to resolve any issue in connection with the orders which need to be entered." Appellee filed a Supplement to her Motion for Extension on April 18, 2013. On the day of the hearing, Appellee filed an affidavit of counsel in support of her laches defense. At the hearing on April 19, 2013, the trial court informed counsel that he would consider the motion for

---

Tenn. R. App. P. 24(a)  (emphasis added).  Had  the  Appellants  adhered  to  this rule regarding the exclusion of discovery, our record would certainly have been more manageable and the interest for judicial economy would have been better served. Because we very often see extraneous filings in the records, we take t his opportunity to remind our future appellants that they should endeavor to adhere to  the  rules  when submitting records to this Court.

[5] At different times,  Judge  Kay  Robilio, Judge Rynette Hurd, Judge Karen Williams, and finally Judge John McCarroll heard this case.

extension. Counsel for the Appellants allege that this came as a surprise to them, as they were only prepared to argue concerning the entry of the order dismissing Appellee's complaint. There appears to have been some confusion as to whether the Appellants were to file a response to Appellee's Motion for Extension. Regardless, on April 24, 2013, the Appellants did file a sixty-four page response to Appellee's Motion for an Extension, as well as another proposed order granting the motions to dismiss. The trial court directed counsel for both parties to submit proposed orders.

On May 3, 2013, the trial court entered an order denying the Appellants' motions to dismiss the complaint. The trial court reasoned: "Since [Appellee's] counsel did not have any prior violations to disclose, [Appellee's] counsel's failure to disclose no violation substantially complies with Tenn. Code Ann. § 29-26-122." In the alternative, the trial court considered Appellee's motion for an extension and granted the motion, reasoning that the failure to disclose the number of past violations was a technical, rather than a material, deviation from the language of the statute based on differing interpretations of the statute and that, consequently, good cause existed to support the extension. The Court also stated that the Appellants waited to raise their objections until after discovery. The trial court, thus, denied the pending motions to dismiss and ruled that the case could proceed.

On May 10, 2013, the Appellants filed a motion in the trial court for an interlocutory appeal. The trial court granted leave to file an interlocutory appeal on June 17, 2013. Appellants filed their Application for Permission to appeal to this Court on June 27, 2013. This Court granted the interlocutory appeal on August 12, 2013.

## II. Issues Presented

Appellants raise five issues for this Court's review, as taken from their brief:

1.   Whether the trial court erred in denying Appellants' Motions to Dismiss Appellee's Complaint when Appellee failed to file a Certificate of Good Faith with her original Complaint that met the requirements of Tennessee Code Annotated Section 29-26-122.
2.   Whether the trial court erred in finding that the mandatory requirements of Section 122, regarding the filing of a Certificate of Good Faith with the complaint, were satisfied by substantial, rather than strict, compliance.
3.   Whether the trial court erred in considering Appellee's Motion for Extension of Time to file a third Certificate

of Good Faith on April 19, 2013, after it had already granted Appellants' Motions to Dismiss on April 4, 2013.[6]

4. Whether the trial court erred in considering Appellee's Motion for Extension of Time to file a third Certificate of Good Faith even though it already held that Appellee's first Certificate of Good Faith substantially complied with the requirements of Section 122.

5. Whether the trial court erred in finding good cause for Appellee's Motion for Extension of Time to file a third Certificate of Good Faith where Appellee's failure to file a [] Certificate of Good Faith with the original complaint was simply the result of attorney oversight and/or misunderstanding of the law.

As we perceive it, there are three issues in this case:

1. Whether the Appellants' motions to dismiss on the basis of noncompliance with Tennessee Code Annotated Section 29-26-122 were timely or whether laches applies to bar this motion?

2. Whether the trial court properly considered and granted the Appellee's motion for an extension to file a certificate of good faith pursuant to Tennessee Code Annotated Section 29-26-122(c)?

3. Whether Tennessee Code Annotated Section 29-26-122(d)(4) regarding disclosure of prior violations of the statutory good faith certificate requirement is subject to either

---

[6]After a thorough review of Appellants' brief, it does not appear that this issue is argued in the body of the Appellants' brief. "[W]hen a party raises an issue in its brief, but fails t o address it in the argument section of the brief, we consider the issue to be waived." *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002). The Appellants do argue this issue in their reply brief; however, a reply brief is a response to the arguments of the appellee, not a vehicle for raising new arguments. *See* Tenn. R. App. P. 27(c). Further, the Appellants cite no legal authority to support their argument on this issue in their reply brief. *See Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000). Accordingly, this issue is waived. Further, from our review of the record, the trial court made only an oral ruling dismissing the Appellee's complaint based on her failure to strictly comply with Tennessee Code Annotated Section 29-26-121. No written final order had yet been entered when the trial court decided to entertain Appellee's motion for an extension. It is well-settled that until a final order is entered "the issues . . . remain[s] in the bosom of the trial court, and any rulings . . . may be modified at any time before a final order is entered." *Wall v. Wall*, No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *23 (Tenn. Ct. App. July 14, 2011) (citing *Greer v. Greer*, No. W2009-01587-COA-R3-CV, 2010 WL 3852321, at *6 n.7 (Tenn. Ct. App. Sept. 30, 2010)). The trial court, therefore, was within its discretion to reconsider its previous ruling.

-6-

strict or substantial compliance?

## III. Standard of Review

This interlocutory appeal involves the trial court's decision to deny the Appellants' motions to dismiss. In considering an appeal from a trial court's denial of a motion to dismiss, we take all allegations of fact in the compla0int as true, and review the trial court's legal conclusions *de novo* with no presumption of correctness. Tenn R. App. P. 13(d); *Mid-South Industries, Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, (Tenn. Ct. App. 2010) (citing *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996)). We examine the legal sufficiency of the complaint and do not consider the strength of the plaintiff's evidence; thus, all factual allegations in the complaint are accepted as true and construed in flavor of the plaintiff. *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011).

The issues in this case involve the construction and interpretation of a statute, Tennessee Code Annotated Section 29-26-122. As recently explained by the Tennessee Supreme Court:

> Our review requires us to determine the meaning of Tennessee Code Annotated section[] [29-26-]122. The leading rule governing our construction of any statute is to ascertain and give effect to the legislature's intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008). To that end, we start with an examination of the statute's language, *Curtis v. G.E. Capital Modular Space*, 155 S.W.3d 877, 881 (Tenn. 2005), presuming that the legislature intended that each word be given full effect. *Lanier v. Rains*, 229 S.W.3d 656, 661 (Tenn. 2007). When the import of a statute is unambiguous, we discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning." *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *see also In re Adoption of A.M.H.*, 215 S.W.3d 793, 808 (Tenn. 2007) ("Where the statutory language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect.") (citing *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 516 (Tenn.2005)). The construction of a statute is also a question of law which we review *de novo* without any

presumption of correctness. *Lind*, 356 S.W.3d at 895.

***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300, 308 (Tenn. 2012).

## IV. Analysis

Appellee's complaint in this case is governed by the Tennessee Medical Malpractice Act ("TMMA").[7] Specifically at issue is the TMMA's requirement that medical malpractice plaintiffs file a certificate of good faith in support of their medical malpractice claims. According to Tennessee Code Annotated Section 29-26-122:

> (a) In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause. The certificate of good faith shall state that:
>
> (1) The plaintiff or plaintiff's counsel has consulted with one (1) or more experts who have provided a signed written statement confirming that upon information and belief they:
>
> (A) Are competent under § 29-26-115 to express an opinion or opinions in the case; and
> (B) Believe, based on the information available from the medical records concerning the care and treatment of the plaintiff for the incident or incidents at issue, that there is a good faith basis to maintain the action consistent with the requirements of § 29-26-115; . . . .
>
> \*   \*   \*

---

[7] The General Assembly saw fit to amend the TMMA to replace the term "medical malpractice" with "health care liability" effective April 23, 2012. *See* Act of April 23, 2012, ch. 798, 2012 Tenn. Pub. Acts. The complaint at issue here was filed December 10, 2010. In this opinion, we will refer to the version of the statute in effect on the date the complaint was filed.

(c) The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. . . . The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has failed to timely produce medical records upon timely request, or for other good cause shown.

(d)(1) Subject only to subdivision (d)(2), the written statement of an expert relied upon in executing the certificate of good faith is not discoverable in the course of litigation.

\* \* \*

(4) A certificate of good faith shall disclose the number of prior violations of this section by the executing party.

(5) The administrative office of the courts shall develop a certificate of good faith form to effectuate the purposes of this section.

It is undisputed that when the Appellee originally filed her complaint in this case, Appellee complied with all particulars of Tennessee Code Annotated Section 29-26-122, save one: the requirement that the certificate of good faith disclose the number of violations of the certificate of good faith by the executing party. There is also no dispute that the Appellee properly complied with the pre-suit notice requirements contained in Tennessee Code Annotated Section 29-26-121. Thus, the only provision at issue in this case is the Tennessee Code Annotated Section 29-26-122 requirement that the certificate of good faith "disclose the number of prior violations of this section by the executing party." Tenn. Code Ann. § 29-26-122(d)(4).

The parties' first issue concerns the timing of the Appellants' motions to dismiss the complaint based on the alleged violation of the good faith certificate statute. Appellee argues that the Appellants waived this argument by their failure to timely raise the issue,[8] or in the

---

[8] In ***Myers v. AMISUB (SFH), Inc.***, 382 S.W.3d 300 (Tenn. 2012), the Tennessee Supreme Court held that the "proper way for a defendant to challenge a complaint's compliance with . . . Tennessee Code Annotated Section 29-26-122 is to file a Tennessee Rule of Civil Procedure 12.02 motion to dismiss." ***Id.*** at 307. The Eastern Section of this Court recently held that a Rule 12.02 motion to dismiss on the basis of failure to comply with the TMMA is not waived by failure to assert the defense pre-answer, as a defendant may present this defense "even as late as 'at trial on the merits.'"

(continued....)

alternative, that the Appellants' statement that it would not pursue its original motion to dismiss after an amended complaint was filed operates as a bar to the Appellants raising the issue.

The parties' next issue concerns what standard of compliance is required to satisfy Tennessee Code Annotated Section 29-26-122. The Appellants argue that Appellee was required to strictly comply with the content requirements of Tennessee Code Annotated Section 29-26-122, citing the Tennessee Supreme Court's decision in *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300 (Tenn. 2012). Indeed, in *Myers*, the Tennessee Supreme Court held that because the filing of a good faith certificate is mandatory, the requirement is "not subject to satisfaction by substantial compliance." *Id.* at 310. Instead, the Court held that strict compliance with the requirements of the statute was required. *Id.* at 310–11. Because the Appellee did not strictly comply with Tennessee Code Annotated Section 29-26-122(d)(4), the Appellants argue that the statute mandates that the complaint be "dismiss[ed] with prejudice." Tenn. Code Ann. § 29-26-122(c).

The Appellants cite two recent cases in which this Court has dismissed, with prejudice, a medical malpractice complaint when the plaintiff failed to disclose the number of prior violations of Tennessee Code Annotated Section 29-26-122 in his or her good faith certificate. In the first case, *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032 (Tenn. Ct. App. March 5, 2013), *perm. app. pending*, the Court of Appeals ruled that a plaintiff must strictly comply with the requirement that he or she "disclose the number of prior violations of [the good faith certificate requirement] by the executing party," even though there were no prior violations to disclose. The Court concluded that this deficiency, along with the plaintiff's failure to comply with the notice provisions of Tennessee Code Annotated Section 29-26-121, absent any showing of extraordinary circumstances, was fatal to the plaintiff's claim. In a similar case, *Caldwell v. Vanderbilt University*, No. M2012-00328-COA-R3-CV, 2013 WL 655239 (Tenn. Ct. App. June 13, 2013) *perm. app. denied* (June 13, 2013), the Court of Appeals likewise dismissed the plaintiff's complaint for failure to file a fully compliant certificate of good faith. *Id.* at *7. The plaintiff's proffered certificate of good faith failed to strictly comply with the statute in two respects: (1) the certificate failed to confirm that the plaintiff consulted with one or more experts who provided a "signed written statement;" and (2) the purported certificate did

---

(....continued)

*Blankenship v. Anesthesiology Consultants Exch., P.C.*, No. E2013-01674-COA-R3-CV, 2014 Tenn. App. LEXIS 129, at *8 (Tenn. Ct. App. Feb. 26, 2014) (citing Tenn. R. Civ. P. 12.08) (noting that "the defense of failure to state a claim upon which relief can be granted . . . may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits")). Thus, based on the holding in *Blankenship*, it does not appear that the Appellants waived their right to raise this defense.

-10-

not disclose the number of prior violations of Tennessee Code Annotated Section 29-26-122. *Caldwell,* 2013 WL 655239 at \*6. Thus, two cases have held that a plaintiff does not comply with Tennessee Code Annotated Section 29-26-122 when he or she fails to disclose the number of prior violations of the good faith certificate requirement, and that this non-compliance may be, along with other statutory violations, fatal to the plaintiff's complaint.

Relying upon the Tennessee Supreme Court's recent decision in *Stevens v. Hickman Community Health Care Services, Inc.*, 418 S.W.3d 547 (Tenn. 2013), the Appellee argues that the holding in *Myers* regarding strict compliance with the statute applies only to the filing of the certificate of good faith, rather than to its content. The *Stevens* Court considered the companion to the good faith certificate requirement, the pre-suit notice requirement, Tennessee Code Annotated Section 29-26-121, which is not at issue in this case. In *Stevens*, the plaintiff timely filed pre-suit notice, but failed to include "[a] HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice" as required by Tennessee Code Annotated Section 29-26-121(a)(2)(E). The trial court held that strict compliance with Tennessee Code Annotated Section 29-26-121(a)(2)(E) was required, but excused compliance on the basis of extraordinary cause. The Tennessee Supreme Court reversed the trial court and held that a plaintiff is merely required to substantially comply with the content requirements of Tennessee Code Annotated Section 29-26-121(a)(2)(E), which requirement "serves an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." The Court held that the purpose of Tennessee Code Annotated Section 29-26-121(a)(2)(E) was to facilitate investigation, rather than provide notice. As such, the Court concluded that "[a] plaintiff's less-than-perfect compliance" with Tennessee Code Annotated Section 29-26-121(a)(2)(E) was a "[n]on-substantive error[] and omission[] [that would] not always prejudice defendants." Accordingly, the Court held that only substantial compliance was required to satisfy the requirements of Tennessee Code Annotated Section 29-26-121(a)(2)(E).

From our research, other recent Opinions have inferred from the *Stevens* Opinion that, while the filing requirements of Tennessee Code Annotated Section 29-26-121 are subject to strict compliance, the content requirements are subject to the less stringent substantial compliance standard. *See Chambers ex rel. Chambers v. Bradley Co.*, No. E2013-01064-COA-R10-CV, 2014 WL 1266101, at \*5–6 (Tenn. Ct. App. March 28, 2014) (applying the "rationale and analysis" from *Stevens* to another provision of Tennessee Code Annotated Section 29-26-121 to hold that only substantial compliance was required to satisfy the content requirements of the provision at issue); *Potter v. Perrigan*, No. E2013-01442-COA-R3-CV, 2014 WL 1260609, at \*4 (Tenn. Ct. App. March 27, 2014) (describing the *Stevens* Opinion as "requiring substantial compliance with the content requirements of the notice

provisions"); *see also* **Myers**, 382 S.W.3d at 310 (specifically declining to opine as to whether "the content of the notice and the certificate of good faith may be satisfied by substantial compliance"); **Caldwell,** 2013 WL 655239 at *6, n.8 ("We note that our Supreme Court has not opined as to whether the **content requirements** of Tenn. Code Ann. § 29-26-122 may be satisfied by substantial compliance.") (emphasis added); **Hinkle v. Kindred Hospital**, No. M2010-02499-COA-R3-CV, 2012 WL 3799215 at *6 (Tenn. Ct. App. Aug. 31, 2012) ("We cannot conclude that the legislature intended that each and every technical, but not material, deviation from the language of the statute could only be excused or corrected by a showing of extraordinary cause."). While these Opinions deal exclusively with Tennessee Code Annotated Section 29-26-121, the pre-suit notice requirement, the Appellee argues that the substantial compliance standard should also apply to the content requirements of Tennessee Code Annotated Section 29-26-122. The Appellee asserts that, under a substantial compliance standard, she has substantially complied with the content requirements of Tennessee Code Annotated Section 29-26-122.

In the alternative, Appellee argues that Tennessee Code Annotated Section 29-26-122(c) gives the trial court discretion to extend the time for filing a compliant certificate of good faith based upon "good cause shown." The Appellee asserts that the trial court did not abuse its discretion by extending the time for filing a compliant certificate of good faith and that, consequently, a certificate fully compliant with Tennessee Code Annotated Section 29-26-122 was timely filed. Because we conclude that the trial court had authority to extend the time for filing a certificate of good faith and did not abuse its discretion in finding "good cause shown," we decline to consider the other issues raised in this case. Regardless of whether the Appellants' motions were timely filed, or whether strict or substantial compliance was required, the Appellee timely filed a motion for extension, which was properly granted by the trial court, as discussed in detail below. Accordingly, the trial court did not err in allowing the case to proceed.

**Motion for Extension**

The Appellee's motion for extension is governed by both the Tennessee Rules of Civil Procedure and statute. Specifically, Tennessee Code Annotated Section 29-26-122(c) provides:

> The failure of a plaintiff to file a certificate of good faith in compliance with this section shall, upon motion, make the action subject to dismissal with prejudice. . . . The court may, upon motion, grant an extension within which to file a certificate of good faith if the court determines that a health care provider who has medical records relevant to the issues in the case has

failed to timely produce medical records upon timely request, or
for other good cause shown.

Thus, based on the plain language of Tennessee Code Annotated Section 29-26-122(c), the plaintiff's failure to timely file a "certificate of good faith in compliance with this section," is not always fatal to the plaintiff's claim. Instead, upon a showing of good cause, the plaintiff may obtain an extension within which to file a certificate of good faith. As explained by this Court: "In short, the statute allows for the late filing of a certificate; dismissal of the action with prejudice based on the fact that the certificate was not filed with the complaint is not automatic." ***Robles v. Vanderbilt University Medical Center***, No. M2010-01771-COA-R3-CV, 2011 WL 1532069, at *3 (Tenn. Ct. App. April 19, 2011) *perm. app. denied* (Aug. 25, 2011).

Tennessee Code Annotated Section 29-26-122(c) contains no express time limit for filing a motion to extend the time for filing a certificate of good faith. The timing is, therefore, governed by Rule 6.02 of the Tennessee Rules of Civil Procedure:

> When ***by statute*** or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect, but it may not extend the time for taking any action under Rules 50.02, 59.01, 59.03 or 59.04, except to the extent and under the conditions stated in those rules.

Tenn. R. Civ. P. 6.02 (emphasis added). Accordingly, a trial court may grant an extension for filing a certificate of good faith, even after the expiration of the time period in which the act was to be completed.

The Appellants argue,[9] however, that this statute is intended to allow an extension to

_____

[9] The Appellants make an additional argument regarding mootness in their brief to this Court. Specifically, Appellants argue that the trial court's consideration of the Appellee's motion to extend was moot because the trial court found that substantial compliance with Tennessee Code Annotated Section

(continued....)

file an original certificate of good faith, and not to allow a plaintiff to file a compliant good faith certificate after having previously filed a non-compliant certificate. The Appellants cite the statute's plain language, which allows an extension "within which to file a certificate of good faith." According to the Appellants, the statute's plain language means that a plaintiff may only seek an extension to file an initial certificate of good faith, and not to file a corrected certificate in compliance with the statute. Further, the Appellants emphasize that "the timing of the statutes is mandatory," citing *Myers*:

> Legislative discussion of the statutes prior to their enactment also indicates that the legislature viewed the statutes as mandatory, demanding strict compliance. For example, in committee discussion of the periods of time allowed for compliance with the statutes' filing requirements, Senator Jim Kyle observed "the whole bill is date driven . . . we don't need the judiciary to interpret our desire there as to what the date is." Senator Mark Norris confirmed that "**the dates mean what they say. Trigger dates are meant to be deadlines**."

*Myers*, 382 S.W.3d at 309, n.8 (emphasis added) (internal citations omitted). The Appellants thus argue that deficiencies in the certificate of good faith may not be corrected by amendment, citing *Vaughn v. Mountain States Health Alliance*, No. E2012-01042-COA-R3-CV, 2013 WL 817032 (Tenn. Ct. App. March 5, 2013).

We decline to accept Appellant's interpretation of this statute. First, while we agree with the Appellants that the *Myers* Court correctly held that the timing set out in the statute is mandatory, we note that the *Myers* Court was not called upon to consider the extension provision in Tennessee Code Annotated Section 29-26-122(c). Indeed, the *Myers* Court expressly noted that the plaintiff in *Myers* failed to file a motion seeking an extension. *See*

---

(...continued)

29-26-122 was sufficient. As we perceive it, however, the trial court made alternative rulings with respect to the issues. Appellants cite no law in which this practice is prohibited or even frowned-upon. It is well-settled that "the failure to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) [of the Tennessee Rules of Appellate Procedure] constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55–56 (Tenn. Ct. App. 2000). From our independent research, we have found several cases that have considered alternative rulings by the trial court, or even encouraged such rulings. *See, e.g., Gerdau Ameristeel, Inc. v. Ratliff*, 368 S.W.3d 503, 508 (Tenn. 2012) (directing trial courts in workers compensation cases to make alternative rulings in order to prevent delay); *BancorpSouth Bank v. 51 Concrete, LLC*, No. W2011-00505-COA-R3-CV, 2012 WL 1269180, at *6 (Tenn. Ct. App. April 16, 2012) (reversing the trial court's ruling that it did not have subject matter jurisdiction, but affirming as to the trial court's alternative rulings on the merits of the case). Accordingly, this issue is without merit.

*Myers*, 382 S.W.3d at 311–12 ("Although the statutory scheme provides the trial court with discretion to, "upon motion, grant an extension within which to file a certificate of good faith . . . , [plaintiff] did not file a motion seeking such relief. Consequently, his complaint must be dismissed with prejudice."). Based on the plain language of the statute, however, the General Assembly created an express avenue of escape from the mandatory deadlines with regard to the filing of the certificate of good faith. A statute "should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says." *In re Samaria S.*, 347 S.W.3d 188, 203 (Tenn. Ct. App. 2011). Accordingly, the General Assembly clearly contemplated that the time for filing a certificate of good faith may be extended, in certain limited circumstances.

In addition, we disagree with the Appellants' characterization of this Court's decision in *Vaughn v. Mountain States.* As previously discussed, the *Vaughn* Court discussed a plaintiff's failure with respect to both the notice requirements of Tennessee Code Annotated Section 29-26-121, and the good faith certificate requirement of Tennessee Code Annotated Section 29-26-122. In considering the plaintiff's failure to properly comply with the notice provisions, the Court stated:

> [Plaintiff] contends that his amended complaint served to cure many of the deficiencies of the original complaint. The statutes at issue, however, do not authorize a claimant to cure deficiencies by filing an amended complaint, and as "[t]he essence of Tennessee Code Annotated section 29-26-121 is that a defendant be given notice of a medical malpractice claim before suit is filed," *Myers*, 382 S.W.3d at 309.

*Vaughn*, 2013 WL 817032, at *6. Thus, the *Vaughn* Court's holding that a plaintiff may not cure deficiencies by amendment related only to the plaintiff's failure to comply with Tennessee Code Annotated Section 29-26-121, rather than to the provision at issue in this case. In addition, in *Vaughn*, nothing indicated that the plaintiff ever filed a motion seeking an extension in which to file a compliant certificate of good faith, unlike in this case. Accordingly, the *Vaughn* holding that amendments cannot cure deficiencies is simply inapposite to the case-at-bar.

Further, we conclude that Appellants' interpretation of the statute yields an inequitable and absurd result. In construing statutes, courts are admonished not to adopt an interpretation that "would yield an absurd result." *Steppach v. Thomas*, 346 S.W.3d 488, 506 (Tenn. Ct. App. 2011) (quoting *State v. Sims*, 45 S.W.3d 1, 11 (Tenn. 2001)). If we were to accept Appellants' argument, a plaintiff could be granted an extension, for good cause, after failing to file a certificate of good faith in its entirety; however, a plaintiff who attempted to comply

with the statute, but did not strictly comply with all content requirements in the statute would not be entitled to the same extension, regardless of whether he or she could show good cause for the failure. This result is not logical.

In a somewhat analogous situation, the Tennessee Supreme Court recently considered whether a transitional[10] plaintiff who refiled his or her action after a non-suit was entitled to a 120-day extension of the saving statute. *See Rajvongs v. Wright*, --- S.W.3d ----, 2013 WL 6504425 (Tenn. 2013). The issue turned on whether a saving statute was properly considered an "applicable statute[] of limitations or repose" pursuant to Tennessee Code Annotated Section 29-26-122, which time period was subject to an extension based on compliance with the notice provisions. *Id.* at *4 The Supreme Court noted that it had "long recognized that the saving statute is not a statute of limitations or a statute of repose and that it operates independently." *Id.* at *5 (citing *Pratcher v. Methodist Healthcare Memphis Hosps.*, 407 S.W.3d 727, 737 (Tenn. 2013)). Regardless, the Court concluded that a transitional plaintiff was entitled to an extension of the saving statue because to hold otherwise was unreasonable and created an inequitable result: "We are unable to conclude that the General Assembly would require transitional plaintiffs to provide pre-suit notice before refiling under the saving statute and yet deprive such plaintiffs of the 120–day extension." *Rajvongs*, 2013 WL 6504425, at *5.

Similarly, in this case, we cannot conclude that the General Assembly intended that the extension pursuant to Tennessee Code Annotated Section 29-26-122(c) is available to those who have completely failed to file a certificate of good faith, while refusing to allow such extension to those who have attempted to comply with the statute, but, for some reason, have failed. In fact, in a case cited by the Appellants to support their contention, *Caldwell v. Vanderbilt University*, this Court  implied that an extension could be available in a situation similar to the one in this case. *Caldwell,* 2013 WL 655239, at *6. In *Caldwell*, the plaintiff had initially filed a certificate of good faith with her complaint, but failed to include the necessary content in a number of respects, as discussed *supra*. The Court dismissed the complaint based on these deficiencies, noting that while the trial court had discretion to extend the time for filing a certificate of good faith, the plaintiff had not sought that relief in the trial court.  Thus, there was no indication from the Court that the plaintiff was not entitled to seek an extension simply because she had already filed a non-compliant good faith certificate simultaneously with the filing of her complaint.

Indeed, another provision of Tennessee Code Annotated Section 29-26-122 supports

---

[10] A transitional  plaintiff is a plaintiff who filed a medical malpractice action prior to the effective date of the TMMA, non-suited his or  her case, and  then re-filed  the action after the effective date of the statutes.

this conclusion. Tennessee Code Annotated Section 29-26-122(a) provides that:

> If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause.

Based on the above language, it appears that when a plaintiff has failed to file any certificate of good faith with the complaint, the only avenues of relief from the mandate of dismissal are based on "the failure of the provider to timely provide copies of the claimant's records" or extraordinary cause. However, when the issue is the filing of a certificate "in compliance with this section," the plaintiff has an additional avenue of relief: showing good cause.[11] Thus, a plaintiff who has filed a certificate of good faith that is not fully compliant with Tennessee Code Annotated Section 29-26-122 may seek an extension to file a certificate fully compliant with the statutory requirements. That is exactly what Appellee sought to do in this case.

## Good Cause

Having concluded that Appellee was entitled to seek an extension of the time allowed for filing her certificate of good faith, we must next determine whether the trial court abused its discretion in granting Appellee's motion. The parties in this case agree that the appropriate standard is the "good cause" standard found in Tennessee Code Annotated Section 29-26-122(c), rather than the "excusable neglect" standard found in Rule 6.02 of the Tennessee Rules of Civil Procedure.[12] Thus, we must consider whether the trial court abused its

---

[11] Our analysis herein should not be interpreted as a holding that a plaintiff who has failed to file any certificate of good faith with his or her complaint is not entitled to seek an enlargement of time to file a certificate based upon a showing of good cause. That issue is not before this Court and we need not decide it. Regardless, one Court has applied the good cause standard to a motion for an extension with regard to a plaintiff who filed no certificate of good faith within the prescribed time period. *See* ***Brandon v. Williamson Medical Center***, 343 S.W.3d 784 (Tenn. Ct. App. 2010) (discussed in detail, *infra*).

[12] We note that the only other case to consider this issue, ***Brandon v. Williamson Medical Center***, 343 S.W.3d 784 (Tenn. Ct. App. 2010), considered both the "good cause" standard and the "excusable neglect" standard, at the request of the plaintiff. The parties in this case, however, agree that the proper standard is good cause. Still, we recognize that our prior decisions have concluded that to receive an enlargement of time under Rule 6.02 "after the original time has lapsed, the requesting party must demonstrate both excusable neglect **and that the opposing party has not been prejudiced by the delay**." *Id.* at 791 (emphasis added) (citing ***Kenyon v. Handal***, 122 S.W.3d 743, 756 (Tenn. Ct. App. 2003). This issue does not appear to have been argued by the Appellants in

(continued.....)

discretion in finding "good cause" in this case.

In the only case considering the extension for "good cause shown" contained in Tennessee Code Annotated Section 29-26-122(c), this Court remarked that "[u]nfortunately, the [TMMA] does not define 'good cause' and we have found no case law defining the phrase with specific regard to section 29-26-122's certificate of good faith requirement." *See Brandon v. Williamson Medical Center*, 343 S.W.3d 784, 789 (Tenn. Ct. App. 2010). Words in statutes must be given "their ordinary and natural meaning," and we may refer to dictionary definitions, where appropriate. *State v. Williams*, 690 S.W.2d 517, 529 (Tenn.1985). The term "good cause" is defined as:

> Substantial reason, one that affords a legal excuse. Legally sufficient ground or reason. Phrase "good cause" depends on circumstances of individual case, and finding of its existence lies largely in discretion of officer or court to which discretion is committed. . . . "Good cause" is a relative and highly abstract term, and its meaning must be determined not by verbal context of statute in which term is employed but also by context of action and procedures involved in [the] type of case presented.

*Black's Law Dictionary* 623 (5th ed. 1979);

In Tennessee, "good cause" has more often been defined by what it is not, rather than what it is. For example, this Court has consistently held that a mere mistake in calendering is insufficient to constitute good cause. *See Barnes v. Hamm*, No. W2011-02288-COA-R3-CV,

---

(....continued)
their brief to this Court. However, in an abundance of caution, we have also considered whether the Appellee's delay in filing her motion for an extension prejudiced the Appellants. Here, the trial court found that the Appellee's delay in seeking a motion for extension was the result of the Appellants' delay in prosecuting their motions to dismiss. Indeed, the record shows that the Appellants informed the Appellee that after the filing of her amended complaint, the Appellants would "strike our motion to dismiss" and that they "d[id] not plan to reset the Motion for hearing." Further, the record shows that in allowing the case to proceed prior to prosecuting their motions to dismiss, the Appellants required the Appellee to engage in voluminous and protracted discovery. While we have not considered whether this inaction rises to the level of either waiver or laches, these issues are relevant to the issue of whether the Appellants suffered prejudice. Further, nothing in the Appellants' brief asserts that the Appellants were prejudiced by the delay. Under these circumstances, and considering that this issue was not properly raised or argued by the Appellants, we conclude that the Appellants were not prejudiced by the Appellee's delay in filing her motion for an extension.

2013 WL 4680398, at *3 (Tenn. Ct. App. Aug. 28, 2013) (construing "good cause" for purposes of Rule 21(b) of the Tennessee Rules of Appellate Procedure) (citing *G.F. Plunk Const. Co., Inc. v. Barrett Properties, Inc.*, 640 S.W.2d 215, 218 (Tenn.1982)). Likewise, "secretarial shortcomings" have also been determined to be insufficient to constitute good cause. *See G.F. Plunk Const.*, 640 S.W.2d at 217. The Tennessee Supreme Court has further noted "that a showing of good cause requires more than a mere good faith belief that a routine office chore has been timely performed." *Id.* at 218. Other courts have concluded that attorney oversight is an insufficient excuse to support a finding of good cause. *See H.D. Edgemon Contracting Co. v. King*, 803 S.W.2d 220, 223–23 (Tenn. 1991) (citing *G.F. Plunk Const.*, 640 S.W.2d at 217). In the context of service of process, federal courts have held that good cause is not shown when: (1) the delay in serving process was intentional; (2) the plaintiff made no effort or only "half-hearted" effort to effectuate service; or (3) the plaintiff made no attempt to correct service after the defendant raised insufficient service in his or her answer. *See* 62B Am. Jur. 2d Process § 116 (citing cases and noting other, inapplicable, circumstances in which federal courts have found no "good cause shown"). However, courts construing the TMMA's "extraordinary cause" requirement have noted that good cause is a less exacting standard than extraordinary cause. *See Hawkins v. Martin*, No. W2011-02318-COA-R3-CV, 2012 WL 3007680, at *6 (Tenn. Ct. App. July 24, 2012) (noting that the plaintiff had not shown good cause, "much less, unique, extraordinary circumstances, that would excuse compliance"); *see also Myers*, 382 S.W.3d at 310–11 ("'Extraordinary' is commonly defined as 'going far beyond the ordinary degree, measure, limit, etc.; very unusual; exceptional; remarkable.'") (quoting *Webster's New World Dictionary of the American Language*, 516 (1966)).

Our research has revealed only one case that has considered the good cause provision in Tennessee Code Annotated Section 29-26-122(c), *Brandon v. Williamson Medical Center*, 343 S.W.3d 784 (Tenn. Ct. App. 2010). In *Brandon*, the *pro se* plaintiff filed a complaint for medical malpractice. *Id.* at 786. The defendants filed a motion to dismiss the complaint based on the plaintiff's failure to file a certificate of good faith within the required time period applicable to medical malpractice complaints at that time.[13] *Id.* at 787. Shortly thereafter, the plaintiff retained counsel. Her counsel then filed a Rule 6.02 motion to enlarge the time for filing a certificate of good faith, as allowed by Tennessee Code Annotated Section 29-26-122(c). In support of her motion, plaintiff's counsel offered the following

---

[13] A 2009 amendment to the TMMA requires the certificate of good faith to be filed simultaneously with the complaint. However, the 2009 amendment applies "only to those action in which the required notice is given on or after July 1, 2009[.]" Because the plaintiff in *Brandon* provided written notice prior to July 1, 2009, she was allowed ninety days within which to file her certificate of good faith. The defendants filed their motions to dismiss after this ninety-day time period had expired. In this case, Appellee was required to file her certificate of good faith simultaneously with her complaint.

explanation for plaintiff's failure to file a certificate of good faith:

> In this case the [p]laintiff was attempting to represent herself and
> simply did not have the knowledge or ability to do so. . . . [H]ere
> [plaintiff] had no independent knowledge of the need to file a
> Certificate of Good Faith and she was not put on Notice of such
> a need by anybody in the Clerk's office at the time she filed the
> Complaint.

*Brandon*, 343 S.W.3d at 787. The trial court first noted that the plaintiff failed to file an affidavit "establishing the facts relied upon to show 'good cause' for an enlargement of time." However, the trial court further found that even considering the facts as stated in her motion as true, good cause had not been shown. Consequently, the trial court granted the defendants' motion to dismiss. *Id.*

In determining that the trial court did not abuse its discretion in denying the plaintiff's motion, the Court of Appeals considered the standard applicable to an enlargement of time pursuant to both Rule 6.02 and Tennessee Code Annotated Section 29-26-122. Specifically, the plaintiff argued that the trial court erred in utilizing the "good cause" standard set forth in Tennessee Code Annotated Section 29-26-122, rather than the "excusable neglect" standard set forth in Rule 6.02. The Court of Appeals, however, found it "unnecessary to address the interplay between the Tennessee Rules of Civil Procedure and Tennessee Code Annotated section 29-26-122, as [the p]laintiff has failed to demonstrate either 'good cause' or 'excusable neglect' in this case." *Brandon*, 343 S.W.3d at 789. In explaining its decision that the plaintiff's proffered justification for her failure to file a certificate of good faith did not constitute good cause, the Court indicated that it simply did not believe the plaintiff's claims of ignorance:

> Despite the absence of a clear definition of "good cause"
> in either prior statutory or case law, we are satisfied that good
> cause has not been demonstrated in this case. At the trial level,
> Plaintiff claimed her failure to timely file a certificate of good
> faith was due to her initial inability to retain an attorney and her
> ignorance of the certificate of good faith filing requirement.
> However, we find [p]laintiff's *pro se* status irrelevant and her
> claims of ignorance suspect.
>
> *   *   *
>
> [D]espite her claim of ignorance of the certificate of good faith

requirement, [p]laintiff, acting pro se, gave the required pre-suit notice, withheld her complaint during the mandatory sixty-day waiting period, and then filed a rather sophisticated complaint on the date the one-year statute of limitations was set to expire.

*Id.* at 789–90. The Court further noted that the plaintiff's affidavit "clearly shows" that she consulted an attorney prior to filing her complaint and that the attorneys had "received written confirmation from an expert willing to provide the opinion necessary to file a certificate of good faith." *Id.* at 790. According to the Court, however, "[p]laintiff offers no explanation as to why, after consulting with attorneys and obtaining the required expert testimony within the 90-day period, her motion for enlargement and her proposed certificate of good faith were not filed until November 30, more than two weeks after the filing of [d]efendants' motion to dismiss." *Id.* Thus, the Court of Appeals found no abuse of discretion in the trial court's refusal to grant an enlargement of time. *Id.*

The situation in **Brandon** is distinguishable from the present case for three reasons. First, in **Brandon**, the trial court denied the motion for extension, finding no "good cause shown." *See id.* at 780–90. Here, the trial court granted the Appellee's motion for extension to file a fully compliant certificate of good faith. This distinction is important due to the standard of review at issue. As explained by the Court of Appeals in **Brandon**, "[o]ur review under either standard [i.e., the Rule 6.02 excusable neglect standard or the Tennessee Code Annotated Section 29-26-122(c) good cause standard] is abuse of discretion." *Id.* at 789. A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. ***Johnson v. Richardson,*** 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). Under the abuse of discretion standard, we look at the evidence in the light most favorable to the trial court's decision. ***Wright ex rel. Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn.2011). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). "[W]e are not permitted to substitute our judgment for that of the trial court." ***Caldwell v. Hill***, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). As explained by this Court in ***In re Estate of Greenamyre***, 219 S.W.3d 877 (Tenn. Ct. App. 2005):

The "abuse of discretion" standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. Appellate courts do not have the latitude to substitute their discretion for that of the trial court. Thus, a trial court's discretionary decision will be upheld as long as it is not clearly

-21-

unreasonable, and reasonable minds can disagree about its correctness.

*Id.* at 885–86 (internal citations omitted). Thus, while the **Brandon** Court was tasked with upholding the trial court's denial of the motion for enlargement so long as that decision was not unreasonable, this Court is required to view the trial court's decision to grant the motion for enlargement in the light most favorable to the trial court's decision and uphold that decision so long as it is not clearly unreasonable. The distinct procedural posture of the two cases is, therefore, highly relevant to the disposition of both appeals.

Next, the plaintiff in **Brandon** did not file any affidavit in support of her motion for extension. In contrast, however, Appellee's counsel filed an affidavit containing the facts supporting her motion. According to Appellee's counsel's affidavit:

> 3.    Contemporaneously with the filing of the Complaint, I filed a Certificate of Good Faith that, based on a plain reading of the statute, and consistent with the decision of other Circuit Courts at the time, I in good faith, believed complied with the requirements of Tennessee Code Annotated Section 29-26-122 . . . .
>
> 4.    Up until the hearing on [Appellants'] Motion to Dismiss in this case, I had never been found in violation of Tennessee Code Annotated Section 29-26-122.
>
> 5.    I caused to be filed an Amended Complaint and a second Certificate of Good Faith containing an affirmative representation of no prior violations on July 6, 2011. Specifically, I stated, "I have been found in violation of T.C.A. § 29-26-122 zero times."
>
> 6.    The only decisions at my disposal early in this litigation that interpreted Tennessee Code Annotated Section 29-26-122(d)(4) all indicated that the lack of affirmatively disclosing no prior violations did not merit dismissal of the action. See Lonnie Ayers v. Dr. Reath, et. al., Knox County, Tennessee, Docket No. 1-460-10; and Lynn v. Coyle, Kno[x] County, Tenn
>
> 7.    I was not aware that any court had held that an affirmative disclosure or no prior violations was required until the decision in Vaughn v. Mountain States Health Alliance. Vaughn v. Mountain States Health Alliance, No. E2012-01042-COA-R3-CV, 2013 WL 817032, at *1 (Tenn. Ct. App. March 5, 2013).   The Vaughn case remains

-22-

unreported as of the date of the signing of this Affidavit.

Accordingly, unlike the plaintiff in **Brandon**, the Appellee followed the appropriate procedure in seeking an extension of the time in which to file a certificate of good faith in compliance with Tennessee Code Annotated Section 29-26-122.

Further, the Court in **Brandon** did not appear to credit the plaintiff's proffered explanation for her failure to file her certificate of good faith, even calling her excuse "suspect." *See* **Brandon**, 343 S.W.3d at 789. Thus, the Court impliedly concluded that the **Brandon** plaintiff's purported "ignorance" of the law was feigned or unreasonable. The trial court, unlike the Court in **Brandon**, appeared to credit the explanation offered by Appellee's affidavit. Indeed, the Appellants do not dispute the allegations contained in the above affidavit. Instead, they argue that even taking the above allegations as true, they are not sufficient to show good cause.

The Appellee's proffered explanation for her failure to affirmatively state the number of her prior violations of Tennessee Code Annotated Section 29-26-122 was, that the requirement to affirmatively state "zero" was not settled law at the time of filing the complaint, causing confusion to both the Appellee and Appellants. The trial court, in denying the Appellants' motions to dismiss, specifically mentioned that Appellee's counsel had no prior violations to disclose and that it was unclear under the case law whether strict or substantial compliance was required to satisfy the content provisions of the TMMA. The trial court further ruled that the Appellee's certificate of good faith complied with the intent of the General Assembly in providing notice and reducing the number of frivolous lawsuits. As we perceive it, then, the trial court held that good cause was shown because the Appellee's technical, but not material, deviation from strict compliance with the statute was based on reasonable confusion in the law and the deviation in no way prejudiced the Appellants from defending this action.

The Appellants argue, however, that, in Tennessee, "a misrepresentation or mistake . . . cannot constitute 'good cause.'" As we perceive it, the Appellants take issue with the trial court's decision to consider the Appellee's substantial compliance with the statute as evidence of good cause. To support this assertion, the Appellants cite the recent Tennessee Court of Appeals decisions in **West v. AMISUB (SFH), Inc.**, No. W2012-00069-COA-R3-CV, 2013 WL 1183074 (Tenn. Ct. App. March 21, 2013) and **DePue v. Schroeder**, No. E2010-00504-COA-R9-CV, 2011 WL 538865 (Tenn. Ct. App. Feb. 15, 2011). However, neither of these cases is relevant to the issues at hand. Instead, both cases consider whether a mistake may constitute extraordinary cause rather than good cause. **West**, 2013 WL 1183074, at *6; **DePue**, 2011 WL 538865, at *8 (discussing, in *dicta*, whether simple "attorney oversight" constitutes good cause). As we have previously explained, the "extraordinary cause" standard

is a higher burden than the simple "good cause" standard. Accordingly, neither of these cases is dispositive of this appeal. In addition, while Appellants assert that the trial court erred in considering Appellee's substantial compliance with the statute in deciding to grant the motion for an extension, Appellants cite no cases in which the trial court has been found to have abused its discretion in doing so. Indeed, as previously discussed, there have been no cases which specifically addressed whether good cause existed to extend the time for filing a certificate of good faith when the plaintiff had substantially, but not strictly, complied with the statute. *See Brandon*, 343 S.W.3d at 786 (noting that the plaintiff had not filed any certificate of good faith, much less substantially complied with Tennessee Code Annotated Section 29-26-122). Accordingly, we decline to conclude that the trial court was not within its discretion to consider this fact when making its determination.

In addition, we respectfully disagree with the Appellants' characterization of the failure in this case as being the result of mistake or oversight. "Oversight" is defined as "an unintentional error." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 632 (2d ed. 1995). Here, Appellee does not assert that she mistakenly failed to include the number of prior violations in her certificate of good faith; instead, she asserts that the law that she relied on at the time of filing the complaint indicated that a plaintiff who had no prior violations of Tennessee Code Annotated Section 29-26-122 had nothing to disclose on his or her good faith certificate, and therefore, the failure to affirmatively state zero violations was not fatal to a medical malpractice claim. We recognize that this Court and the Tennessee Supreme Court have held that dismissal of medical malpractice actions was proper, despite the fact that case law regarding the TMMA was unclear at the time the plaintiffs filed their complaints. However, as previously discussed, other than the *Brandon* Opinion, no cases have considered confusion regarding the law in the context of a motion for an extension to file a certificate of good faith. *See, e.g., Myers*, 382 S.W.3d at 310–11 (dismissing the action and noting that the plaintiff did not file a motion seeking an extension within which to file a certificate of good faith); *Vaughn*, 2013 WL 817032, at \*6 (considering violations of both Tennessee Code Annotated Section 29-26-122 and -122, with no indication that the plaintiff filed a motion for extension); *Caldwell,* 2013 WL 655239 at \*6 (considering two violations of Tennessee Code Annotated Section 29-26-122 and specifically noting that the plaintiff had not filed a motion for extension). In addition, while the plaintiff in *Brandon* may have asserted that she experienced confusion regarding the filing of her complaint, neither the trial court nor the appellate court appeared to credit the plaintiff's assertions or to believe that the plaintiff's confusion was in any way reasonable. Accordingly, the *Brandon* Opinion is not dispositive of this appeal.

Reasonable confusion as to the law has been held to constitute good cause in other jurisdictions. For example, in *Jonzun v. Estate of Jackson*, No. 12-12019-DJC, 2014 WL 1214511 (D. Mass. March 24, 2014), the District Court of Massachusetts noted that a *pro se*

plaintiff who has failed to comply with service of process rules may show good cause for an extension when the plaintiff can demonstrate "confusion on his part, either because of his unfamiliarity with the rules, or because of his reliance on the misleading advice of others." *Id.* at \*5 (citing **McIsaac v. Ford**, 193 F.Supp.2d 382, 384 (D. Mass. 2002)). Other federal courts have agreed that reasonable confusion may constitute good cause in different circumstances. For example in **Blake v. Baker**, --- F.3d ----, 2014 WL 983623 (9th Cir. 2014), the Ninth Circuit Court of Appeals held that while "[t]here is little authority on what constitutes good cause," "[a] petitioner's reasonable confusion . . . will ordinarily constitute 'good cause'" in the context of exhaustion of state remedies. *Id.* at \*2 (quoting **Pace v. DiGuglielmo**, 544 U.S. 408, 416, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *see also* **Stillman v. Staples, Inc.**, No. 07-849 (KSH), 2009 WL 1437817 (D.N.J. May 15, 2009) (holding that the trial court did not err in reopening proof, when the plaintiff showed good cause "based upon a mistake of law concerning the ability to" present certain evidence). In other contexts, however, reasonable confusion has been held insufficient to constitute good cause. *See, e.g.,* **Cutler v. State, Dept. of Public Safety & Corrections**, --- So.3d ----, 2014 WL 551534, at \*3 (La. Ct. App. 2014) ("[M]ere confusion over a party's proper service information was not sufficient to show good cause for improper and untimely service . . . ."); **Peddicord v. Colvin**, No. CV13-0337-PHX-DGC, 2014 WL 31834, at \* (D.Ariz. Jan. 6, 2014) (noting that "confusion about the purpose" of a prior hearing does not constitute good cause to remand an administrative decision back to the prior tribunal for the consideration of new evidence).

The Appellants do not assert that the law regarding the content requirements of the certificate of good faith was clear at the time the Appellee filed her complaint. Indeed, counsel for the Appellants admitted their own confusion over the state of the law when questioned about their delay in prosecuting their original motion to dismiss the Appellee's complaint, explaining:

> Because there wasn't sufficient case law developed, we didn't bring it for a hearing at an earlier time. As soon as there was sufficient case law construing the specific statute at issue, specific subsection at issue, we brought it immediately to the Court for hearing.

Accordingly, even the Appellants were unsure of the proper requirements of Tennessee Code Annotated Section 29-26-122(d)(4), long after the filing of the complaint in this case. In addition, the record shows that the two cases in which this issue had been decided by trial courts in favor of the Appellee's position, **Lonnie Ayers v. Dr. Reath**, *et. al.*, and **Lynn v. Coyle**, had both been denied interlocutory appeals by the Eastern Section of this Court. Although we caution litigants from interpreting the denial of an interlocutory appeal as an affirmance of the underlying decision, we can understand how this state of affairs only added

to the Appellee's reasonable confusion in this case. Further, it appears that the plaintiff in *Vaughn* filed a Rule 11 application for permission to appeal that case to the Tennessee Supreme Court. As of the filing of this Opinion, however, the Supreme Court has not taken any action on that application. *But see Caldwell,* 2013 WL 655239 at *1, *perm. app. denied* (June 13, 2013) (noting two violations of Tennessee Code Annotated Section 29-26-122, rather than merely a violation of the prior violations provision). In addition, both cases cited by the Appellants as support for its assertion that the Appellee's claim should be dismissed involved more than a mere violation of Tennessee Code Annotated Section 29-26-122(d)(4). *See Caldwell,* 2013 WL 655239 at *6 (involving a violation of the requirement that the plaintiff consult with an expert who provides a written statement); *Vaughn*, 2013 WL 817032, at *6 (involving violations of the pre-suit notice provisions of Tennessee Code Annotated Section 29-26-121). Accordingly, this issue is far from settled. Under these circumstances, we must conclude that the Appellee's confusion was reasonable.

Based upon the above case law, there appears to be a split of authority regarding whether reasonable confusion regarding the law is sufficient to justify good cause. Clearly, reasonable minds disagree as to this issue. As previously discussed, a trial court's discretionary decision must be upheld so long as "reasonable minds can disagree about its correctness." *Greenamyre*, 219 S.W.3d at 886. Consequently, we cannot conclude that the trial court abused its discretion in finding good cause to support the motion for an extension in this case and allowing the late-filing of a fully compliant certificate of good faith.[14] Accordingly, we affirm the trial court's denial of the Appellant's motions to dismiss based on Appellee's failure to file a fully compliant certificate of good faith contemporaneously with her complaint. All other issues are pretermitted.

## V. Conclusion

The judgment of the Circuit Court of Shelby County is affirmed. This cause is remanded to the trial court for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellants UHS of Lakeside LLC d/b/a Lakeside Behavioral Health System; John J. Harris, M.D.; John J. Harris, M.D., P.C.;

---

[14] Appellants also argue that the trial court erred in considering a previously filed certificate of good faith in denying the motions to dismiss, rather than directing the Appellee to file another certificate of good faith. From our review of the record, the Appellee filed a copy of her July 6, 2011 certificate of good faith as an attachment to her motion for extension. The Appellants' cite no law stating that the trial court acted beyond its discretion to consider this attachment as the certificate of good faith in denying the motions to dismiss. Further, there is no dispute that the Appellee eventually filed a fully compliant certificate of good faith with the trial court. Having been furnished with no law to the contrary, we conclude that the Appellants have failed to show that the trial court abused its discretion in this regard.

Olugbenga Faleye, M.D.; and PrimeHealth Medical Center, P.C., and their surety.

_____
J. STEVEN STAFFORD, JUDGE